274 So.2d 179 (1973)
STATE of Louisiana
v.
Ervin C. ST. AMAND.
No. 52183.
Supreme Court of Louisiana.
February 19, 1973.
Rehearing Denied March 26, 1973.
*183 Michael F. Barry, Andrews & Barry, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
From a conviction and sentence for armed robbery, Ervin C. St. Amand prosecutes this appeal. Twenty-two bills of exceptions are relied upon for reversal of the conviction.
Ralph Decuir, a driver and delivery man collector for Delta American T-V Rental, was held up on January 17, 1970 at about 5:30 in the afternoon on the 2100 block of Whitney Street in Algiers (New Orleans). The robber walked up behind Decuir as he was returning to his truck. Attracted by an indistinct noise, Decuir turned to face the robber, who commanded, "Turn around and don't look at me." Seeing the man was armed with a pistol, Decuir obeyed. He was ordered into the truck where the robber took $85 from his wallet and departed.
Decuir drove to the police station, reported the robbery and described the robber as small in statute, clean shaven, neatly dressed and carrying a small caliber, blue steel pistol.
On the same day, just before or after the robbery of Decuir, Jerry Bartholomew, a truck driver of A.B.C. T-V Rental Company in Algiers, was also robbed. Several days later, on January 22, 1970, Anthony Canconeri, a truck driver of Dixie Potato Chips, was also robbed in Algiers in the same general neighborhood.
About the middle of February, following a tip from a reliable informer, officers of the New Orleans Police Department showed a number of pictures, including one of St. Amand, to Bartholomew, Canconeri and another robbery victim. All identified the photograph of the accused as the man who robbed them. Based upon this and other evidence then available to them, Detectives Eaton, Walker and Strata went to St. Amand's apartment in the neighborhood where the robbery of Decuir, Bartholomew and Canconeri had occurred.
Ethel St. Amand, defendant's wife, answered the door and was told by the officers they were looking for Ervin St. Amand who was wanted for armed robbery. She told them he was not there, but they could look around the apartment. While searching the apartment, they saw a narcotics outfit (a cooker, eyedropper and bulb, with a disposable needle) on a dresser in a back bedroom. Two men and a woman found there were placed under arrest for possession of narcotics. In a closet of the room they found a .22 caliber revolver in a lady's black shoe.
At Ethel St. Amand's suggestion, the officers continued the search for St. Amand, who they soon found hidden beneath soiled clothes in a hallway closet. He came out swinging and cursing and had to be forcibly subdued. He was arrested for armed robbery, possession of narcotics, aggravated assault and resisting arrest.
The following day, March 1, Decuir picked St. Amand out of a lineup, and identified him as the man who robbed him.

Bills 1 and 9
These two bills were reserved to the denial of a defense motion for the production of exculpatory evidence, seeking "any evidence in the possession of the State which may tend to prove the innocence of the defendant." In particular, bus *184 tickets and a weapon, St. Amand's property, were sought. The State replied that all property belonging to St. Amand had been returned to him. When the motion was denied, these bills were reserved.
Although no argument is made, the authorities relied upon are the Sixth and Fourteenth Amendments to the United States Constitution, Article I, Section 9, of the Louisiana Constitution and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In the Brady Case the due process provisions of the United States Constitution were held to be violated when the confession of an accomplice of the defendant was withheld by the prosecution. Disclosure of the confession would have exonerated defendant of the actual killing for the murder charge he was defending.
Nothing approaching the facts or circumstances of the Brady Case exist here. As the trial judge pointed out in his per curiam, the State had no evidence tending to exculpate St. Amand.
These bills are without merit.

Bill 2
Before the trial the defense filed a prayer for oyer setting forth that he was entitled to all oral and written confessions, statements and admissions made by St. Amand, either before or after his arrest, bearing upon the offense for which he was charged, bus tickets taken from his person and the weapon used in the crime.
The State answered it was not in possession of any written statements made by St. Amand and that it was not required to furnish defendant with oral statements, or the physical evidence in its possession which it intended to use against the accused at the trial. The court sustained the State's position.
An accused may not demand production before trial of his oral statements or confessions of which the State has knowledge. State v. Hunter, 250 La. 295, 195 So.2d 273 (1971). Here the accused did not confess either orally or in writing, but did make some remarks to one of the detectives in the hospital about his narcotic activities. This oral statement was used as evidence to impeach his testimony at the trial.
We have repeatedly held that the only objects in the possession of the prosecution which are subject to pretrial inspection by the accused are written and video-taped confessions and, in some instances, a portion of narcotic drugs or other dangerous substances on which the charge is based. State v. Migliore, 261 La. 722, 260 So.2d 682 (1972); State v. Hall, 253 La. 425, 218 So.2d 320 (1969).
This bill has no merit.

Bill 3
Ralph Decuir, the victim, identified defendant as the perpetrator of the robbery at a lineup held at police headquarters after defendant's arrest. Defendant was also identified at that lineup by Canconeri and Bartholomew as the man who robbed them. All threeDecuir, Canconeri and Bartholomewtestified at the trial identifying the defendant as the robber.
The lineup included seven Negroes, all dressed alike. The testimony of all parties concerned with the lineup, both officers and the identifying witnesses, stated that seven black males of similar physical characteristics composed the lineup. St. Amand was permitted to choose his place and took the middle spot. Members of the lineup performed the same acts and repeated the same words ("turn around; don't make me hurt you"). Decuir, Bartholomew and Canconeri were seated by themselves quite a distance from each other, and no one said anything to them about who was in the lineup or suggested that any particular person be picked out. Finally each witness individually and in private reported his identification to the police *185 officers; none suggested his conclusion to the other.
Although defendant was not represented by counsel at the lineup, he signed a waiver which the trial judge found to be intelligent, voluntary and understandingly made. The voluntariness of this waiver is the principal contention on this bill. Review of the evidence convinces us that the finding of the trial judge is supported by a preponderance of the evidence and the ruling should not be disturbed.
The court found, moreover, that the in-court identifications were based upon observations of the suspect other than the lineup identification, stating, "This court, in applying the criteria set out in State v. Allen, 251 La. 237, 203 So.2d 705 (1967), to the factual situation of this particular case, found that the witness had, in fact, an opportunity to observe the defendant, Ervin St. Amand, during the commission of the acts he is charged with."
This bill has no merit.

Bill 4
Prior to trial, the accused filed a motion to suppress as evidence the pistol and narcotic paraphernalia seized in St. Amand's apartment, alleging the seizure was the result of a warrantless and invalid search conducted without probable cause. Concededly no warrant was issued for the search, but the State contends the seizures were incidental to the use of all substantive and procedural safeguards to which the accused was entitled. Incidentally, no narcotics or narcotic paraphernalia were introduced in evidence.
New Orleans police had been told by a confidential informer that St. Amand was connected with the Algiers robberies recently reported to them. Acting on this tip on February 17 and 18, 1970, Detective Eaton of the robbery division showed seven pictures of similar persons to Jerry Bartholomew and Anthony Canconeri. It will be recalled that both were victims of robberies in Algiers on January 17 and 22, 1970, respectively. The pictures were also shown to Hannan Congress, another robbery victim in a hat shop in the same neighborhood. Each separately and individually picked out Ervin St. Amand's photograph as having a strong resemblance to the robber.
Thereafter, on February 28, 1970, Detectives Eaton, Walker and Strata went to St. Amand's apartment at 10:30 in the morning. Ethel St. Amand answered the door. After identifying themselves, the officers told her they were looking for her husband. She said he was not there, but the detectives could enter and look around the apartment.
Sound from a television in a back room attracted the officers. In the back room they found a man and woman in bed and another man sitting in a chair nearby. One of the men was recognized as Henry Alexander, also wanted for armed robbery. On a dresser nearby in plain view, in a torn paper bag, the detectives saw a narcotic outfit (cooker, eye-dropper and bulb and disposable needle). The occupants of the room were placed under arrest for possession of narcotics. As these individuals were only partially dressed, Detective Walker began handing their clothes to them from a nearby clothes hanger. In doing so he found a pistol in a woman's shoe.
At Ethel St. Amand's suggestion the search for Ervin continued. In a hallway closet the detectives saw his legs protruding from beneath a pile of clothes. He was ordered out and emerged cursing, striking and reviling the officers. After he was subdued he was arrested for armed robbery, possession of narcotics, aggravated assault and resisting arrest.
An arrest may be made on any day and at any time of the day or night and at any place. La.Code Crim.Proc. art. 216. An officer who has announced his authority and purpose may enter any dwelling in *186 which the person to be arrested is reasonably believed to be. La.Code Crim.Proc. art. 224.
Louisiana's arrest procedure, together with the uncontradicted testimony that Ethel St. Amand gave permission to the officers to enter, made the arrest in St. Amand's apartment permissible when the facts, as in this case, gave reasonable cause to believe St. Amand had committed a felony.
Article 213 of the Code of Criminal Procedure authorizes an officer to arrest a person without a warrant when there is reasonable cause to believe that the individual to be arrested has committed an offense, although not in the presence of the officer. Reasonable, or probable, cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to justify a man of average caution in the belief that an offense has been committed. In determining whether reasonable cause for arrest exists, the rigorous proof required for conviction is not needed. Reasonable cause is something less and must be judged by the probabilities and practical considerations of everyday life on which average men, and more particularly average police officers, can be expected to act. State v. Williams, 260 La. 1167, 258 So.2d 539 (1972); State v. Dell, 258 La. 1024, 249 So.2d 118 (1971).
In summary, as the facts of this case disclose, the New Orleans police had been told by a confidential informer that St. Amand was connected with the neighborhood robberies in which Decuir was a victim. Acting on this tip seven pictures of similar persons were shown to victims of those robberies, and St. Amand was identified. Reasonable cause was thus shown to proceed to arrest St. Amand. Nothing about the circumstances surrounding the arrest involved a deprivation of rights to St. Amand.

Bill 5
Seven men were placed in the lineup at which Ralph Decuir, the victim, identified St. Amand. A defense motion was filed to suppress the identification because the circumstances of the lineup were suggestive of St. Amand's participation in the crime. For this reason the motion sets forth, the suggestions so tainted the identification that it was violative of principles announced by the United States Supreme Court in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Stovall v. Denno, 388 U.S. 293, 87 S. Ct. 1967, 18 L.Ed.2d 1199 (1967).
On the trial of the motion, Decuir testified under direct examination by defense counsel that five persons were in the lineup and St. Amand was the third, or in the middle. When the district attorney attempted to correct the erroneous testimony on cross-examination by leading questions, referring the witness to a picture of the lineup and a statement made by him soon thereafter, defense counsel objected.
The trial court found that the particular question complained of was not leading, nor was it an attempt to change the testimony of the witness. The witness was asked if he recalled how many people were in the lineup. It was obvious from the witness' prior testimony a mistake had been made regarding the number of persons in the lineup and the State was attempting to clarify the record. The correct facts were thereby later brought out. Since this questioning by the State was cross-examination, leading questions, if they were such, would not under these circumstances be objectionable.

Bill 6
During questioning on the defense motion to suppress identification, the prosecutor asked Decuir whether, granting that he may have been mistaken in the number of men in the lineup, there could be any *187 doubt in his mind about the man then present in the room (referring to St. Amand) being the same person he identified in the lineup as the robber. The court permitted the witness to answer the question over defense objection that such testimony was irrelevant to the issue of the fairness of the lineup.
The ruling was correct. If for no other reason, since the defense had placed the reliability of the witness' testimony in question on the number of persons in the lineup, the question was relevant to show that the erroneous testimony given by the witness on the number of persons was purely incidental and had no bearing upon the real purpose of the lineup which was identification.

Bill 7
At the hearing held on the motion to suppress identification, Detective James Eaton was being cross-examined by the prosecutor. A photocopy of the waiver of counsel signed by St. Amand was sought to be identified. Defense counsel objected that it was not the best evidence and the original should be produced. The objection was overruled pending further testimony.
Eaton then testified that the document was signed by him as a witness. He had no trouble identifying his signature from the copy. St. Amand also signed after it was read and explained to him, knowing he was a suspect for armed robbery. St. Amand further indicated he understood the contents; he was not promised a reward; he was not abused and he was informed he had a right to an attorney. Finally the trial judge gave as his reason for the ruling that no showing was made of any discrepancy between the original and the copy. The witness was able to identify his signature on the copy. The defendant did likewise.
No prejudice was shown by the ruling and the bill has no merit.

Bill 8
On the hearing held on the motion to suppress the identification, the prosecuting attorney propounded a question to Detective Eaton. The inquiry was whether, in the conduct of the lineup, when statements were made to the witness by persons in the lineup, others in the lineup were required to make similar statements? Defense counsel objected that the question assumed as a fact that persons in the lineup did make statements. This fact was not in evidence, according to his recollection. It was therefore an assumption contrary to Section 278 of Title 15 of the Revised Statutes.
The objection was overruled and this bill was reserved.
Section 278 of Title 15 provides:
Neither upon direct nor cross-examination is it permissible to propound a question which assumes as true that which the jury alone are charged with finding, or which assumes as proven facts which have not been proven, or which assumes that particular answers have been given that have not been given.
The short answer to the objection is that defense counsel's recollection was inaccurate. Prior to Detective Eaton's testimony, Decuir testified that during the lineup he asked the officers to make St. Amand talk to corroborate his visual identification. As a result, the officers made all those in the lineup speak.
On this finding the assumption that individuals in the lineup had spoken was correct and the objection was unfounded.

Bill 10
This bill was reserved when the State objected to a question by defense counsel which sought to obtain the name of a confidential informer relied upon by Detective Eaton to arrest St. Amand. The trial judge sustained the objection for, *188 among other reasons, he did not think the name of the informer was necessary to establish probable cause since the State had obtained identification of St. Amand as the robber from three separate victims of three separate robberies.
It should be added that the facts upon which the credibility and reliability of the informer were based were made known to defense counsel. These facts consisted of information given by the same informer in other cases which served as a basis for arrest and conviction prior to giving the information relied upon in the case at bar. See McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938).
This bill has no merit.

Bill 11
This bill concerns the court's ruling permitting Detective Walker to examine his report for the purpose of "refreshing his memory", without any showing that, after the inspection, Walker could testify to the facts of his own knowledge, as required by Section 279 of Title 15 of the Revised Statutes, which provides:
A witness may be allowed to refresh his memory by reference to his testimony given on the preliminary examination, or at a coroner's investigation, or on a previous trial, or, for the purpose of refreshing his present memory a witness may examine memoranda, and it is immaterial by whom or when the memoranda were made, provided that, after such inspection, the witness can testify to the fact.
This bill lacks merit. For, in keeping with the cited section, after referring to his report, Detective Walker was able to describe from memory the events which transpired in the St. Amand residence on the morning of the arrest.

Bill 12
Prior to commencement of the trial, defendant's counsel filed his motion for restrictive order no. 1, requesting the court to restrict evidence in the case at bar to the armed robbery of Ralph Decuir, the victim charged in the bill of information. The motion sought to restrain the State from any reference during the trial to any other offenses allegedly committed by defendant. In this motion, defendant did stipulate that the perpetrator of the crime charged in the bill of information had guilty knowledge and did intend to commit an armed robbery, thus removing any controversy over the elements of guilty knowledge, system and intent.
The court denied the motion, and during the trial the State produced evidence incriminating defendant in the armed robberies of Ralph Decuir and Jerry Bartholomew on January 17, 1970 and of Anthony Canconeri on January 22, 1970; the last two robberies were proven to show guilty knowledge or intent.
The novel motion and the stipulation it contains that the perpetrator of the crime charged had guilty knowledge and did in fact intend to commit an armed robbery, significantly, does not admit that St. Amand committed the crime charged. To compel the State to adhere to such a suggestion could seriously impair the strength of its case before the jury. The other robberies show guilty knowledge and intent which is the essence of this crime, and these robberies involve St. Amand, the party accused, not some unknown person. These are the facts which the jury should know about and which it should consider in its deliberations on guilt or innocence.
Such a showing is approved by the Legislature (La.R.S. 15:445-15:446) and has often been recognized as permissible by this Court. State v. Spencer, 257 La. 672, 243 So.2d 793 (1971). And the law makes no distinction whether the offense offered to prove intent and guilty knowledge occurred *189 before or after the crime charged. State v. Montegut, 257 La. 665, 243 So.2d 791 (1971).
The restrictive order was properly denied.

Bill 13
Another restrictive order was sought by defense counsel requesting that the court confine the evidence at the trial and not permit the State to make reference to narcotics found at the scene of the arrest, St. Amand's apartment. Initially the court granted the motion, but subsequently changed its ruling to allow the State to elicit testimony relating to the narcotic paraphernalia found at the scene of the arrest.
To support the order defense counsel argues that evidence of possession of narcotics is not probative of any guilty knowledge, system, or intent, or of any element of proof whatsoever, insofar as the offense of armed robbery is concerned. Consequently, such evidence was not admissible against defendant in this case under the authority of Sections 445 and 446 of Title 15 of the Revised Statutes.
The bill lacks merit. The argument overlooks the fact that evidence which is inadmissible for one purpose may be admissible for another. Such is the case here. Reference to the narcotic paraphernalia was permitted in connection with the circumstances attending the arrest of the accused. Such evidence is particularly relevant when the legality of the arrest has been questioned.
It is proper for the prosecution to prove the facts and circumstances surrounding the arrest of the accused for the crime for which he is being tried, and his conduct at the time of arrest is relevant and admissible. State v. Richard, 245 La. 465, 158 So.2d 828 (1963). 1 Wharton's Criminal Evidence § 202-03 (12th ed. 1955); 2 Underhill's Criminal Evidence § 372-73 (5th ed. 1956); 22A C.J.S. Criminal Law § 628, Arrest and Attending Circumstances.

Bill 14
On the day set for trial, defense counsel filed a motion to withdraw on the grounds that irreconcilable differences had become manifest between him and the accused over the conduct of the defense. Defense counsel then informed the court that he had been retained as counsel by the accused for six months, and of the thorough and extensive preparation he had made for trial. Notwithstanding this thorough investigation of the facts, the accused insisted upon calling witnesses in his behalf who had been interviewed by defense counsel and who would testify adversely to the accused.
Quite properly the trial judge found no reason justifying the motion. In a per curiam the trial judge noted his familiarity with defense counsel's ability, his diligence and thorough preparation. He was of the opinion the defendant was merely attempting to obtain further delay in his trial. The motion to withdraw was denied.
An accused has the right to counsel of his own choosing to defend him on a criminal charge. U.S.Const., 6th Amend., La. Const. art. 1 § 9; La.Code Crim.Proc. art. 511. However, this right does not permit arbitrary action which obstructs orderly procedure in the courts. United States v. Bentvena, 319 F.2d 916 (2d Cir. 1963). Rather, the right to choose one's attorney is a right to be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system of which it is a part. Further, absent a justifiable basis, there is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications. United States v. Cozzi, 354 F.2d 637 (7th Cir. 1965); Commonwealth v. Novak, 395 Pa. 199, 150 *190 A.2d 102 (1959). Once the trial day has arrived the question of withdrawal of counsel rests largely within the discretion of the trial judge. State v. Boudoin, 257 La. 583, 243 So.2d 265 (1971).
This record speaks eloquently of defense counsel's ability, industry and application. St. Amand's day in court was fully defended by able counsel.
This bill is without merit.

Bill 15
A bill was reserved when the court permitted Detective Eaton, a state witness, to testify in the presence of the jury regarding seven photographs, including one of St. Amand, presented to Jerry Bartholomew and Anthony Canconeri for identification of the party who robbed them. Both Bartholomew and Canconeri identified the accused as the robber. The questions to Eaton were, "Was a photograph physically picked out?"; "Was the photograph handed to you?"; et cetera. The questions were objected to as hearsay. La.R.S. 15:434.
These questions do not seek to elicit hearsay testimony. The questions sought testimony of physical activity performed in Eaton's presence and viewed by himthat is, the selection of St. Amand's photograph from among seven proferred to Bartholomew and Canconeri.
Hearsay evidence is testimony a witness offers in court which is not based on his own knowledge, but is merely a repetition of what he has been told, and which is offered as proof of the matter he is repeating. State v. Wilkerson, 261 La. 342, 259 So.2d 871, decided March 27, 1972; 1 Wharton's Criminal Evidence, § 249 (12th ed. 1955). The questions at issue do not fall within this category.

Bill 16
In his testimony at the hearing on the motion to suppress identification, the victim Ralph Decuir referred to the robber's weapon as a "small caliber, nickel plated gun ... short barrel." At the trial the prosecutor displayed a blue steel revolver to Decuir, which Decuir identified as the weapon used in the robbery. He stated the gun was "a small caliber gun, dark ...." When asked on cross-examination if he had testified previously that the gun was a nickel-plated revolver with a shot barrel, Decuir replied he could have. His principal recollection, he testified, was that the gun was of small caliber. The circumstances surrounding the robbery did not afford an opportunity for close observation, he said.
The State then called Patrolman Carr to whom Decuir had reported the robbery. Over defense objection, the State elicited testimony from Carr repeating the description Decuir gave him of the holdup gun on that occasion. The color was blue steel.
The testimony was objected to as hearsay and as an effort by the State to impeach its own witness.
Decuir's statement to Patrolman Carr was admissible as part of the res gestae, an exception to the hearsay rule. Decuir was afraid to use a phone booth near the scene of the robbery. Accordingly he went directly to the police station nearby, arriving minutes after the robbery, distraught from his highly exciting experience. This was "under the immediate pressure of the occurrence" as contemplated in the res gestae rule announced in Section 447 of Title 15 of the Revised Statutes, and the liberal construction it has been accorded in this State. State v. Raymond, 258 La. 1, 245 So.2d 335 (1971); State v. Reese, 250 La. 151, 194 So.2d 729 (1967); State v. Madison, 261 La. 35, 258 So.2d 863, decided March 8, 1972.
No effort was being made by the State to impeach Decuir's testimony. To the contrary, an attempt was being made to corroborate his testimony before the jury to the effect that the robbery weapon was a blue steel revolver. This was permissible *191 under the rule announced in Section 496 of Title 15 of the Revised Statutes, which is: "When the testimony of a witness has been assailed as to a particular fact stated by him, similar prior statements, made at an unsuspicious time, may be received to corroborate his testimony." State v. Fontenot, 48 La.Ann. 283, 19 So. 113 (1896); State v. Waggoner, 39 La.Ann. 919, 3 So. 119 (1887).
This bill has no merit.

Bill 17
Although the record is not clear, it appears that during defendant's testimony he attempted to testify to an admission by an inmate of the prison where he was confined that he, the inmate, had committed the crime for which St. Amand was charged. The State objected to what anyone else had said as hearsay.
Declarations against penal interest are exceptions to the hearsay rule in many jurisdictions. Under this exception, if a witness is dead or for some reason cannot testify, a statement confessing guilt to the crime charged is admissible as a declaration against interest. 5 Wigmore on Evidence § 1455-77 (3d ed. 1940).
Since there was no showing or attempt to show that the inmate making the declaration against interest was dead or unable to testify, his statement cannot be availed of as an exception to the hearsay rule.

Bill 18
Defense counsel moved for a mistrial, contending that during cross-examination of defendant the district attorney displayed a three-page "rap sheet" to the jury, containing reference to numerous arrests of defendant, only three of which resulted in convictions. Thus, it is argued, although evidence of convictions is admissible for impeachment purposes, evidence of arrest, indictment or prosecution is not. Likewise, defense counsel states, no witness, defendant or otherwise, may be questioned on cross-examination concerning arrests or indictments, only convictions. La. R.S. 15:495.
In a per curiam and in connection with his ruling denying the mistrial, the judge noted that he did not agree with defense counsel. He too had an opportunity to observe the incident complained of and he did not see the prosecutor display the "rap sheet" in such a way that it could be read by the jury. Since the observations of defense counsel and the trial judge are contradictory and no other evidence supports defense counsel's version, we accept the facts as found by the judge.
The bill has no merit.

Bill 19
St. Amand had just testified on direct examination that the gun found in the apartment was not his. He said he didn't own a gun. On cross-examination he was told that Henry Alexander said the gun was his. This he denied. He was then asked, "Are you telling me the three policemen lied?" Whereupon defense counsel objected that the question was "argumentative and probative and serves no useful purpose."
Wide latitude is allowed upon cross-examination. When a person accused becomes a witness he may be cross-examined upon the whole case. La. R.S. 15:462. Aside from this, the question was not argumentative. There was no undue emphasis on the issue raised by the question. The question stated the obvious. The pistol was presented at the trial as St. Amand's pistol. A clear inference was that the police were responsible for the charge that the pistol was his. They found it in his apartment. When he denied that the pistol was his, the denial carried with it the implication that those responsible for presenting the gun as his (the police) were lying. The question sought to ascertain from St. Amand if his denial carried this *192 implication. The question was permissible. A witness may state a natural inference from something he has observed, or an impression made on him from certain facts. State v. Cole, 161 La. 827, 109 So. 505 (1926).
Regulating the scope of cross-examination rests largely within the discretion of the trial judge. In the absence of an abuse of that discretion, his ruling will not be disturbed. No abuse is present here. The bill has no merit.

Bill 20
This bill improperly cumulates a number of questions, the objections thereto and the numerous rulings thereon. Principally, it may be said, the issue presented concerns a question, or series of questions, propounded to defendant on cross-examination by the State in an effort to impeach his testimony. He was asked whether or not he used narcotics. When defendant denied that he did, asserting that he had "kicked the habit" shortly before his arrest, the prosecuting attorney proceeded to impeach his testimony. It was shown that St. Amand had a conversation with a police officer after his arrest and while in Charity Hospital. At that time he stated he was "shooting" in excess of $50 of narcotics daily. He stated then that he was trying to get rid of the people staying in his house because "they were shooting all the narcotics he could bring home."
In our view the questioning was proper. It will be recalled that the State during its case in chief had elicited testimony from Detective Eaton, one of the arresting officers, that there was a narcotics outfit in St. Amand's apartment at the time of his arrest. Moreover, prior to trial, the prosecution had informed the accused in writing of its intention to introduce into evidence an inculpatory statement of his as required by Article 768 of the Code of Criminal Procedure.
Further, the predicate required by Section 493 of Title 15 of the Revised Statutes was established. St. Amand was asked whether he made the statement, his attention was called to the time, place and circumstances, and to the person to whom the alleged statement was made. Out of an abundance of caution the trial judge, in order to assure himself that defendant was not under the influence of drugs or pain while the statement was made, required the State to lay a predicate of voluntariness. This was done.
Cross-examination of a witness is not limited to matters covered on direct examination. In this State, when a person accused becomes a witness he may be cross-examined upon the whole case. La. R.S. 15:462; State v. Polk, 258 La. 738, 247 So.2d 853 (1971). And the State has an undoubted right to cross-examine defense witnesses to test their credibility. State v. Dreher, 166 La. 924, 118 So. 85 (1928); State v. Dunn, 161 La. 532, 109 So. 56 (1926).
Nor was this an effort to impeach the defendant on an irrelevant matter contrary to the prohibition of Section 494 of Title 15 of the Revised Statutes as the defense contends. As shown herein, the evidence of narcotic paraphernalia found in St. Amand's apartment made this questioning within the scope of that subject.
It is almost axiomatic today that most armed robberies are associated with drug addicts trying to obtain funds to sustain their grim appetites. In armed robbery prosecutions, therefore, the subject of drug use by the accused is relevant.
There is no merit to this bill.

Bill 21
This bill has no merit. The question is whether the State may show on rebuttal that testimony given by the defendant was untrue. Clearly the State may do so.

*193 Bill 22

During his closing argument to the jury, the district attorney explained that the law required the prosecution to show that the lineup was not in violation of the rights of the defendant, that he was not singled out, that the participants in the lineup were afforded complete liberties, and the subjects in the lineup were dressed the same. He concluded, "the result is that the Court has indicated or ruled that in [is] a fair lineup ...." At this point he was interrupted and the quoted statement was objected to as prejudicial. La.Code Crim.Proc. art. 774. The court overruled the objection "for the reason that the matter of the identification of the defendant, as well as the facts surrounding the said identification, i. e., lineup, et cetera were part of the testimony of the trial and certainly within the scope of the argument by the prosecutor."
The ruling is correct. A reasonable conclusion could be drawn by the prosecutor that the court considered the lineup to be fairthat is, procedurally. The effect to be given to the identification testimony was, however, a question for the jury. Since the prosecutor was interrupted in his argument he was never given an opportunity to complete his statement. What he may have said is speculative. Nevertheless, even the partial statement is within the scope of the evidence and can be considered a reasonable conclusion drawn from the evidence. No prejudice was shown and in our view none resulted from the statement.
The bill has no merit.
For the reasons assigned, the conviction and sentence are affirmed.
BARHAM, J., dissents from the language of the opinion, the legal conclusion, and the result.
TATE, J., dissents and assigns written reasons.
TATE, Justice (dissenting).
In the writer's opinion, prejudicial error was committed when the prosecutor brought out the defendant's drug addiction. He was on charge for armed robbery, and the majority inferentially admits such prejudicial evidence was prejudicially irrelevant insofar as the crime charged.
The majority justifies the admission of this testimony because the discovery of narcotics paraphernalia was admissible in connection with proof of the legality of the arrest and the subsequent search by which the defendant was found hiding in the apartment. See Bill No. 13.[1] This narcotics paraphernalia may have been admissible as proof of the circumstances of arrest, but this does not justify cross-examining and proving this defendant, on trial for armed robbery alone, was a narcotics addict.
I am cited to no theory of law which will justify permission for such greatly prejudicial cross-examination concerning drug addiction (entirely unrelated by our law as to the question of guilt or innocence), simply because some evidence in the recordrestricted in admission solely to prove circumstances of the arrest and its validity and the search of the premises indicated that someone in the apartment in which the defendant was found used drugs.
The production of impeaching testimony on rebuttal that defendant used narcotics was improper rebuttal. La.R.S. 15:282. *194 Bill 20. The impeaching testimony was admitted in direct violation of La.R.S. 15:494: "It is not competent to impeach a witness as to collateral facts or irrelevant matter."
I also have reservations as to the proof of other offenses, allegedly similar, to prove guilty knowledge and intent. See Bill No. 12. These other offenses, like the drug addiction dragged in, do not focus the attention of the jury on the accused's innocence or guilt of the crime for which being tried. Their prejudicial effect is to prove that the defendant is a bad man who should be convicted, whether or not guilty of the crime for which he is presently on trial. I am not so certain that the modus operandi of the other robberies is so dissimilar as to justify reversing, were this bill the sole issue.
However, in connection with the completely irrelevant and grossly prejudicial testimony as to drug-addiction, the reception of this testimony convinces me that the defendant did not receive the fair trial to which he is entitled under our lawthat the thrust of the evidence was that he was a bad man, not that he was guilty of the crime for which tried.
I might add, as to Bill No. 16, that the prior consistent testimony of the victim was indeed admissible, as the majority held but not because it is part of the res gestae. Res gestae statements are the "impulsive and spontaneous words and acts of the participants", La.R.S. 15:447, but they are not narrative statements made by the victims in reporting the crime to the police away from the scene after it has occurred, under any traditional view of the spontaneous utterance exception. The testimony was, however, admissible under La.R.S. 15:496, as a prior statement at an unsuspicious time used to corroborate his testimony at the trial when there assailed as to a particular fact stated by him.
I should finally note that the question objected to by Bill 19, "Are you telling me the three policemen lied?", was improper and argumentative, as requiring one witness to comment upon the credibility of another. While it may not have been reversible error by itself, we should not condone this sort of questioning by holding it to be proper.
For the reasons noted, I find myself forced to dissent, being unable to agree that the defendant received a fair trial due to the several prejudicial violations of the rules of criminal procedure and the admission of prejudicial irrelevant evidence of other offenses not properly admissible in the prosecution of an accused for a different crime.
NOTES
[1] I feel that this latter testimony itself was probably inadmissible, because the legality of the search and probable cause were more properly non-jury motion-to-suppress questions and not, strictly speaking, relevant evidence on the trial on the merits of innocence or guilt. However, had it not been used as it was in this case, I am not convinced that such admission by itself was reversible error.