342 So.2d 1257 (1977)
John A. KYLE et al.
v.
CITY OF NEW ORLEANS and Lieutenant Eugene Fields of the New Orleans Police Department.
No. 7823.
Court of Appeal of Louisiana, Fourth Circuit.
February 15, 1977.
Rehearing Denied March 15, 1977.
Writ Granted May 18, 1977.
Leroy J. Falgout, Kenner, for plaintiffs-appellants.
Philip S. Brooks, Joseph J. Laura, Jr., Freeman R. Matthews, New Orleans, for defendants-appellants.
Before GULOTTA, SCHOTT and MORIAL, JJ.
GULOTTA, Judge.
Plaintiffs sustained gunshot wounds when arrested by defendant police officers *1258 who had obtained information placing suspicion on plaintiffs as perpetrators of an armed robbery. In the subsequent damage suit, the trial judge concluded that the warrantless arrest, though lawful, had been effected with unreasonable force.
All parties appeal from the general damage awards in favor of plaintiffs against defendants, City of New Orleans and Lt. Eugene Fields of the New Orleans Police Department, in solido. Plaintiffs contend that no probable cause existed to justify the arrest and seek damages for false arrest and imprisonment as well as an increase in the quantum of general damages. Defendants deny liability on the grounds that the arrest was legal and effected with reasonable force under the circumstances.
On February 19, 1972, at approximately noon, the New Orleans Police Department received a report that an armed robbery had been committed by two masked, white males at the A&P Supermarket on Harmony and Magazine Streets in the City of New Orleans. Information obtained in an ensuing police investigation implicated plaintiffs, John A. Kyle and George E. Godbey, as the robbery suspects; and shortly after 8:00 p. m., on the same day, a team of police officers went to Kyle's apartment to arrest them.
Plaintiffs' version of the incident is that five armed officersfour wearing civilian dress suits and one clad in a windbreaker and sports clothespositioned themselves at the entrance of the apartment occupied by plaintiffs. According to Kyle, when he opened the door in response to a knock, he observed a male in civilian clothes holding a shotgun; whereupon, in fear of being robbed, he slammed the door. Shotgun blasts were fired into the apartment through the door, and the three plaintiffs were injured.
According to the police officers' version, they had been reliably informed that the apartment was occupied by two perpetrators of the armed robbery. The police officers claim that they positioned themselves at the apartment entrance; Lt. Eugene Fields then knocked on the apartment door; and, after the door was opened by Kyle, one of the other police officers identified himself and produced his identification folder. Despite this identification, the police officers claim that Kyle slammed the apartment door. During the ensuing attempt to gain entrance, the shotgun was fired for the purpose of disengaging the lock on the door.

PROBABLE CAUSE
The primary thrust of plaintiffs' appeal is that the trial judge erred in concluding defendants possessed sufficient and reliable information to effect a warrantless arrest. According to plaintiffs, the arresting officers did not have probable cause to believe that plaintiffs had committed the A&P robbery and that no "exigent circumstances" required immediate entry without a warrant. We disagree.
During the investigation immediately following the robbery, the police interviewed Ralph Lozier, a security guard. He informed the officers that Kenneth Hodell, also a security guard, had told him that he (Hodell) had spoken with Kyle and Godbey prior to the robbery, at which time plaintiffs had inquired about obtaining guns; the security of the A the time of arrival of the armored car; and the location of the safe. This conversation between Lozier and Hodell took place approximately two days prior to the robbery. The height and weight descriptions of the suspects were similar to the plaintiffs. The officers were led by Hodell to Kyle's apartment where the arrest was made.
With regard to the statements given to the police by Lozier and Hodell, Lt. Eugene Fields testified:
"[B]ased on what they had told us, based on the physical description, based on the fact that they [Kyle and Godbey] lived in the area of the supermarket, we felt we had probable cause to go to the apartment and effect the arrest." *1259 Lt. Fields further testified that Hodell's admissions following initial lies[1] led him to conclude that there was some type of conspiracy which Hodell was attempting to cover up. Hodell was interrogated by the police for approximately three hours and was arrested and booked in connection with the robbery. Based on this information, the arresting police officers believed that the apartment occupants had perpetrated the robbery and were armed and dangerous.
LSA-C.Cr.P. art. 213 provides, in pertinent part:
Art. 213. Arrest by officer without warrant; when lawful
"A peace officer may, without a warrant, arrest a person when:
******
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer;"
In State v. Dell, 258 La. 1024, 249 So.2d 118, 122 (1971), the court stated that this "reasonable cause" or "probable cause" to arrest without a warrant
". . . exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable, trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that an offense has been or is being committed. Compliance with these standards is, in the first instance, a substantive determination to be made by the trial court from the facts and circumstances of the case.
******
"In such cases, because only factual issues are presented by the contentions, the setting in which the arrests took place becomes a factor of prime importance; facts and circumstances known to the arresting officers from which they might draw conclusions warranted by their training and experience become the focus of our attention with due allowance for the discretion vested in the trial court. * * *"
Further, as the court stated in State v. St. Amand, 274 So.2d 179, 186 (La.1973):
"* * * In determining whether reasonable cause for arrest exists, the rigorous proof required for conviction is not needed. Reasonable cause is something less and must be judged by the probabilities and practical considerations of everyday life on which average men, and more particularly average police officers, can be expected to act. * * *"
Applying the jurisprudential tests for "reasonable" or "probable" cause, we conclude the record supports the trial judge's determination that probable cause existed to effect the warrantless arrests of Kyle and Godbey. The fact that subsequent information and arrest of other persons proved that the robbery had not been perpetrated by plaintiffs (resulting in the dismissal of charges against Kyle and Godbey) does not alter the fact that information gained prior to the arrest was sufficient to place police officers in the reasonable belief that plaintiffs were perpetrators of the robbery.

REASONABLENESS OF FORCE TO EFFECT THE ARREST
Having concluded that probable cause existed, we are confronted with the question whether the actions of the officers in effecting the arrest were excessive. LSA-C. Cr.P. arts. 220 and 224 provide:
Art. 220. Submission to arrest; use of force
"A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained."
Art. 224. Forcible entry in making arrest
"In order to make an arrest, a peace officer, who has announced his authority and purpose, may break open an outer or *1260 inner door or window of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, where the person to be arrested is or is reasonably believed to be, if he is refused or otherwise obstructed from admittance. The peace officer need not announce his authority and purpose when to do so would imperil the arrest."
The circumstances under which the arrest was effected determine the reasonableness of the police officers' actions. See Graham v. Ogden, 157 So.2d 365, 366 (La.App. 3d Cir. 1963).
In our case, Hodell had accompanied a group of police officers to the plaintiffs' apartment after dark on the day of the robbery. After learning from the apartment manager the particular apartment occupied by Kyle and Godbey, the civilian-clothed officers proceeded up the stairs and positioned themselves at the door of the apartment. Lt. Fields, armed with a handgun and shotgun, positioned himself to the left (unhinged) side of the doorway. Sgt. Fred Williams positioned himself to the left of Fields. Another police officer stood behind Lt. Fields; and two other officers, one also armed with a shotgun, stationed themselves to the rear and left of Fields. The hallway was narrow and the lighting was dim.
According to Williams, in response to his knock, Kyle opened the door approximately 18 inches. Williams testified that when the door opened, he showed, in plain view of Kyle, his police identification and badge, and at the same time stated "Police". Whereupon, Kyle immediately slammed the door and the officers could hear voices and movement from within the apartment. Williams stated that he kicked the door open partially, but that it was slammed shut again. According to Fields, after the second unsuccessful attempt to open the door, he (Fields) fired two shotgun blasts at a downward angle to the right, lower portion of the door beneath the lock in order to gain entry. Williams fired one pistol shot at an upward angle in the upper part of the door. Plaintiffs were injured by pellets from a shotgun blast.
The testimony of Fields and Williams was generally corroborated by the other arresting officers. Sgt. Williams testified that the slamming of the door following his identification as a police officer "gave us more credence to the story that had been related to us about the armed robbers". The officers testified that they continued to shout their identity as policemen in the course of the shoving contest, but the resistance to their entry continued. Faced with the choice of retreating or forcibly entering the apartment, Lt. Fields decided to fire into the door and gain immediate entry rather than to subject himself and his officers to the injury that might result from a shootout if the suspects were given time to arm themselves.
Under these circumstances, we conclude that the officers acted reasonably in effecting the arrest. In reversing the lower court judgment on this point, however, we do so as a matter of law. Our conclusion is not based on a credibility determination different from that of the trial judge. Rather, we disagree with the trial judge's assessment of the legal duty required of police officers under the circumstances.
In his reasons for judgment, the trial judge stated:
"Before firing blindly through the door, the officers had the duty to make sure their identification was comprehended, or take less violent action to accomplish the arrest."
We disagree. We conclude, as a matter of law, that the duty of the police officer is to do that which is reasonable, i.e., he is required to take reasonable means to inform the suspect or accused of his identity as a police officer. We base our holding on the factual finding, implicit in the trial judge's reasons, that Williams identified himself as a police officer both visually by presenting his badge and vocally by announcing his status. In performing those actions, the officers discharged their duty. Given this evidence of reasonable identification, the trial judge was in error to impose *1261 upon the officers the further duty of making certain that their identification was comprehended by the arrestee.
We are aware that Kyle claims he misunderstood the identity of the officers and failed to comprehend their announcement, but the facts remain that the announcement was reasonably made and that the door was slammed. Regrettably, Kyle himself precipitated the firing of the weapon when he unjustifiably slammed the door. His failure to recognize the identity of the officers was not the result of any omission on the part of the police officers, but rather a consequence of his, Kyle's, failure to understand their adequate announcement. Kyle, in effect, provoked the force employed by the officers and, therefore, is not entitled to recovery. Greening v. Hill, 221 So.2d 261 (La.App.2d Cir. 1969), writ refused, 254 La. 125, 222 So.2d 880 (1969); Bernstine v. City of Natchitoches, 335 So.2d 51 (La.App. 3d Cir. 1976).
Unfortunately, plaintiffs were victims of a peculiar set of coincidences. The record discloses that any discussion of firearms between plaintiffs and Hodell was made for the purpose of obtaining guns for self-protection. The security of the A&P store was a topic of indiscreet "shop-talk" by Hodell, a private security guard, during the Wednesday night meal with plaintiffs a few days before the robbery. Kyle, a victim of a previous mugging, no doubt felt, upon seeing the shotgun when he opened the door, that he himself was the victim of an armed robbery. Though subsequent events indicate that it was not necessary for the police officers to fire into the door, given the circumstances at the time and the reasonable belief that the officers were effecting the arrest of armed felons, the force employed by them was reasonable. As stated in the Official Revision Comment (b) of LSA-C.Cr.P. art. 220:
"* * * It is neither just nor sound policy to impose a test of actual necessity upon a person who is performing a public service, and acting on the spur of the moment, in making an arrest. Yet, a requirement of reasonableness would preclude the use of clearly inappropriate force."
Police have a right to protect themselves and under the facts of our case, the officers were justified in taking drastic measures. We are quick to point out, however, that police officers do not have unbridled discretion to use force, and that courts must be cautious not to condone unreasonable police tactics. Unprovoked attacks and use of excessive force by police officers are actionable. Myles v. Falkenstein, 317 So.2d 292 (La.App. 4th Cir. 1975).
Accordingly, for the reasons stated hereinabove, the judgment of the trial court in favor of plaintiffs and against defendants, City of New Orleans and Lt. Eugene Fields, in solido, is reversed and set aside. Judgment is now rendered dismissing plaintiffs' suit at plaintiffs' costs.
REVERSED AND RENDERED.
NOTES
[1] Polygraph tests had been administered to Hodell and to Lozier.