357 So.2d 1389 (1978)
John A. KYLE, Rosemary Deig, wife of/and George E. Godbey
v.
CITY OF NEW ORLEANS and Lieutenant Eugene Fields of the New Orleans Police Department.
No. 7823.
Court of Appeal of Louisiana, Fourth Circuit.
April 17, 1978.
Rehearing Denied May 10, 1978.
Writ Refused June 30, 1978.
*1390 Leroy J. Falgout, Kenner, for plaintiffs-appellants.
Philip S. Brooks, Joseph J. Laura, Jr., New Orleans, for defendants-appellants.
Before GULOTTA, SCHOTT and GARSAUD, JJ.
GULOTTA, Judge.
On remand from the Louisiana Supreme Court, this matter is before us on the question of quantum.[1] While an arrest was being effected by New Orleans police officers, plaintiffs sustained injuries from shotgun blasts. The circumstances leading to the use of excessive force, as determined by the Supreme Court, are set forth in our earlier decision, Kyle v. City of New Orleans, 342 So.2d 1257 (La.App. 4th Cir. 1977) and in the Louisiana Supreme Court decision, No. 59,683, 353 So.2d 969 (La.1977).
The trial judge awarded, in general damages, $25,000.00 to John A. Kyle and $750.00 each to George E. and Rosemary Deig Godbey. In this appeal, plaintiffs seek an increase in the amounts of the general damage awards. We affirm.

JOHN A. KYLE
As a result of the February 19, 1972 incident, Kyle, a 65-year-old retired seaman, suffered a comminuted fracture of the lower femur and damage to the femoral artery. Following surgery at Charity Hospital, plaintiff was placed in and remained in traction during his 56-day hospitalization at Charity. Subsequent to discharge on April 15, 1972, Kyle was admitted to the U.S. Public Health Service Hospital for further treatment where he remained hospitalized for an additional 48 days. When Kyle was transferred from Charity, he was fitted with a spica body cast which was replaced, on April 27, 1972, with a walking leg cast. He was discharged on June 2, 1972, but was readmitted to the Public Health Hospital on June 29 for "primarily custodial and dispositional care". Kyle's cast was removed on July 24 and a July 25 report indicates that he had been treated with exercises to the left hip, knee and ankle and was ambulating with crutches. He was discharged on August 8, 1972 with instructions to continue out-patient physical therapy treatments three or four times a week. However, Kyle did not return for therapy after August 10, 1972. Plaintiff underwent additional surgery on April 3, 1973, when three lead shotgun pellets were removed from his left upper thigh.
Examination by Dr. Byron M. Unkauf, an orthopedic surgeon, on April 9, 1974, revealed a ¼" shortening of the left leg and a 3/8" wasting of the thigh muscle. As a result of the injury, according to Dr. Unkauf, Kyle has sustained a 30% permanent disability of the lower limb. He has a shortening of the left leg, contributed to by a "bowing of the thigh" and walks with a limp. Misalignment of the leg resulted in limited rotation of the hip joint and limited (30%) flexion of the knee. Dr. Unkauf indicated that crepitation (popping) of the knee is partially a result of the gunshot wound.
Kyle testified that he was semiconscious immediately following the gunshots and experienced "quite a bit of pain" then, throughout postoperative therapy and even at the time of trial. He complained of leg soreness when he walks. Kyle suffered no loss of earnings. Because of treatment received at Charity and the U.S. Public Health Service Hospital, he incurred no medical expenses.

GEORGE E. AND ROSEMARY DEIG GODBEY
The Godbeys received pellet wounds in the legs. Mrs. Godbey did not testify at *1391 trial[2] and her husband's testimony does not directly address itself to the particulars of her leg injury, except to say that his wife screamed when the guns were fired and that she paid for several prescriptions as a result of the accident. George Godbey stated that he was shot on the inside of the left thigh, that the pellet was removed from the leg with a pair of tweezers and that no stitches were necessary. Because these plaintiffs received treatment at Charity also, they incurred no medical expenses.
In addition to the testimony regarding their physical injuries, both Kyle and Godbey related the fear they experienced at the time of the incident. Kyle stated that he first thought they were the subjects of a "stickup" by hoodlums. Because he feared he would be killed, he "played dead". Godbey stated that one of the arresting officers placed a revolver to his head, thereby placing him in fear of his life.
We are confronted with the sole issue whether the general damage awards are so inadequate as to constitute an abuse of the much discretion rule. We think not. Undoubtedly, Kyle sustained severe injury to his leg, resulting in a permanent disability. We recognize also that he experienced fear [3] as a result of the incident. Nevertheless, considering the severity of the injuries and the fear experienced, we are inclined to the belief that the $25,000.00 general damage award is perhaps on the low side but not so inadequate as to constitute an abuse of the trial court's discretion. We reach the same result regarding the Godbeys' injuries. Finding no abuse, we affirm.
AFFIRMED.
NOTES
[1] Plaintiffs filed suit for damages resulting from their arrest and judgment was rendered in their favor by the trial court. On appeal, we reversed, 342 So.2d 1257 (La.App. 4th Cir. 1977). Certiorari was granted by the Supreme Court on May 18, 1977, and our decision was reversed and set aside. The case was remanded to this court for a consideration of quantum.
[2] Because of disability unrelated to the shooting, Mrs. Godbey was unable to testify. At trial, counsel stipulated that she had received "one or two pellets in the calf" from the shotgun blast and was treated as an outpatient on two or three occasions.
[3] In Hoffman v. All Star Insurance Corp., 288 So.2d 388 (La.App. 4th Cir. 1974), writ refused, 290 So.2d 909 (La. 1974) and Singleton v. Townsend, 339 So.2d 543 (La.App. 4th Cir. 1976), damages were awarded for fear apart from physical injury.