# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 19-682


STATE OF LOUISIANA

VERSUS

CASSETTI DEWAYNE BROWN, JR.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 91528AM
HONORABLE TONY ALAN BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John E. Conery, and Van H. Kyzar, Judges.

### AFFIRMED IN PART; VACATED IN PART; AND REMANDED.

Annette Fuller Roach
Louisiana Appellate Project
P. O. Box 1747
Lake Charles, LA 70602-1747
Telephone: (337) 436-2900
COUNSEL FOR:
    Defendant/Appellant – Cassetti Dewayne Brown, Jr.

Asa Allen Skinner
District Attorney – 30th Judicial District
Terry W. Lambright
First Assistant District Attorney – 30th Judicial District
P. O. Box 1188
Leesville, LA 71446
Telephone: (337) 239-2008
COUNSEL FOR:
    Plaintiff/Appellee – State of Louisiana

**Jeffrey M. Landry**
**Attorney General**
**P. O. Box 94005**
**Baton Rouge, LA 70804**
**Telephone: (225) 326-6200**
**COUNSEL FOR:**
**Other Appellee – Attorney General of the State ofLouisiana**

**Cassetti Dewayne Brown, Jr.**
**Main Prison Walnut Hall-2**
**Louisiana State Prison**
**Angola, La 70712**
**Defendant/Appellee – Cassetti Dewayne Brown, Jr.**

**THIBODEAUX, Chief Judge.**

On September 6, 2017, Defendant, Cassetti[1] Dewayne Brown, Jr., was charged by bill of information with possession with the intent to distribute a schedule II, controlled dangerous substance (CDS II) (cocaine), in violation of La.R.S. 40:967(A)(1) and (B)(4)(b)[2] (count one); possession of CDS II (methamphetamine), in violation of La.R.S. 40:967(C) (count two); illegal carrying of weapons in the presence of CDS, in violation of La.R.S. 14:95(E) (count three); and possession of a firearm by a convicted felon, in violation of La.R.S. 14:95.1 (count four). All of these charges had an offense date of June 9, 2017. On January 3, 2018, the State filed an amended bill of information, adding four new charges, all with October 31, 2017 offense dates: possession with intent to distribute CDS II (hydrocodone and oxycodone), in violation of La.R.S. 40:967(A)(1) and (B)(1)(a) (count five); possession with intent to distribute CDS II (cocaine) in violation of La.R.S. 40:967(A)(1) and (B)(1)(a) (count six); possession with intent to distribute CDS I (synthetic cannabinoids), in violation of La.R.S. 40:966(A)(1) and (B)(2)(a) (count seven); and possession with intent to distribute CDS I (marijuana), in violation of La.R.S. 40:966(A)(1) and (B)(2)(a) (count eight).

Mr. Brown proceeded to trial on November 13, 2018. On November 16, 2018, the jury found Mr. Brown guilty as charged on counts one, two, three, four, but not guilty as to counts five and eight. The jury also convicted Mr. Brown in

---

[1] Both bills of information spell Mr. Brown's first name as "Cassetti"; however, Mr. Brown's name, based upon his pro se brief, is actually spelled "Casetti." As it is the practice of this court to use the name on the bill of information, we will refer to Mr. Brown as "Cassetti" outside of quotations.

[2] Louisiana Revised Statutes 40:967 was amended by 2017 La. Acts No. 281, § 2, effective July 1, 2017. For clarity and simplicity, we will refer to the relevant statutory provisions as they are cited in the amended bill of information.

counts six and seven by ten-to-two and eleven-to-one verdicts, respectively. After denying Mr. Brown's motion for new trial and adjudicating Mr. Brown a third felony offender with respect to count four and a fourth offender with respect to the remaining charges, the trial court, on May 8, 2019, sentenced Mr. Brown to an aggregate sentence of one-hundred sixty-five years at hard labor without benefit of probation, parole, or suspension of sentence by ordering the sentences for all counts, except for count seven, to run consecutively. Mr. Brown, thereafter, filed a motion to reconsider sentence, which the trial court denied without reasons.

For the following reasons, we affirm Mr. Brown's convictions in counts one through four, but remand this matter to the trial court for resentencing with concurrent sentences on counts one through four, with the length of the sentences to be in accordance with the enhanced sentencing provisions of the Habitual Offender Law, La.R.S. 15:529.1. Additionally, in light of the Supreme Court's recent holding in *Ramos v. Louisiana*, 590 U.S. __, 140 S.Ct. 1390 (2020),[3] we vacate Mr. Brown's convictions and sentences and remand for a new trial on counts six and seven.

I.

**ISSUES**

On original and supplemental brief, Mr. Brown through counsel raises seven assignments of error for this court's review:

1. the trial court erred in denying the Motion for New Trial filed on behalf of Mr. Brown.

2. the trial court erred in applying the incorrect version of La.R.S. 15:529.1 as to the applicable cleansing period, in limiting the defense's cross-examination during the habitual offender hearing, and in its

---

[3]This opinion can be found at 2020 WL 1906545. Note, in this plurality opinion, the concurrences are published with their own sequence of page numbers.

2

ruling that the State had sufficiently proven that the five-year cleansing period had not been met.

3. the trial court erred in permitting the State to introduce the statement made by Appellant without first showing he had been properly advised of his *Miranda* rights.

4. the sentences imposed by the trial court violate the Eighth Amendment of the Constitution of the United States and La. Const. Art. I, § 20, as they are nothing more than cruel and unusual punishment and, thus, excessive, especially in light of the fact the trial court ordered that five of the sentences be served consecutively to each other.

5. the verdicts returned in this case on counts six and seven must be set aside as they were not returned by a unanimous jury, in violation of the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States.

6. the verdicts returned in this case on counts six and seven must be set aside as they were not returned by a unanimous jury, in violation of the right to trial by jury set forth in the Sixth Amendment of the Constitution of the United States as interpreted by the courts.

7. trial counsel rendered assistance below that guaranteed by the Sixth Amendment and Appellant was prejudiced as a result of counsel's deficient performance.

Mr. Brown also raises two pro se assignments of error:

1. the trial court erred by denying a hearing on Mr. Brown's motion to suppress.

2. the affidavits for search warrants were insufficient and defective.

## II.

## FACTS AND PROCEDURAL HISTORY

At sentencing, the trial court summarized the relevant facts as follows:

3

According to the offense reports, on June the 8th, 2017, a search warrant was obtained by the Vernon Parish Narcotics Task Force, based on the Task Force making three controlled buys of crack cocaine from 1729 Nona Street, Leesville, Louisiana during the months of April through June 2017. The controlled buys were made from a known drug dealer, Casetti Brown, Jr. On June the 9th, 2017, agents executed the warrant and made contact with Brown at the residence on Nona Street. During the investigation, search, and questioning of Mr. Brown, crack cocaine and weapons were found inside the residence. Mr. Brown was charged with possession of Schedule I with intent to distribute, possession of Schedule II methamphetamine with intent to distribute, possession of Schedule II cocaine with intent to distribute, possession of a firearm by a convicted felon, and possession of a firearm while in possession of a controlled dangerous substance. On October the 31st, 2017, another search warrant was obtained due to additional criminal activity supported by controlled purchases of illegal narcotics from Casetti Brown, Jr. at 1729 Nona Street, Leesville, Louisiana. Mr. Brown had bonded out on the earlier arrest and continued his criminal activity. Contact was made by Vernon Parish Narcotics Task Force, uh, and Casetti Brown, Jr., Jerry Brown, and Steven Brown were secured without incident. During the search, a substance was found that was field tested and was positive for cocaine. Another substance was found that was tested and was positive for methamphetamine. Another firearm was found in the residence and approximately 90 red-in-color seeds or plants were found which is a type of a poisonous plant.

By bill of information, dated September 6, 2017, and amended bill of information, dated January 3, 2018, the State charged Mr. Brown with counts one through four, with an offense date of June 9, 2017, and counts five through eight, with an offense date of October 31, 2017, respectively. Thereafter, Mr. Brown, on July 25, 2018, filed a motion to suppress evidence, seeking suppression of all evidence seized during searches of his residence along with all statements made prior to the advisement of his *Miranda* rights. The motion alleged the affidavits in support of the search warrants were insufficient to establish probable cause, thus rendering the searches warrantless and without consent. On August 3, 2018, the State filed an

4

objection to the motion, alleging it was untimely filed. Following a contradictory hearing on August 8, 2018, the trial court granted the State's objection and ruled the motion to suppress was untimely under La.Code Crim.P. art. 521.

A jury found Mr. Brown guilty as charged on counts one, two, three, four, six, and seven, and not guilty on counts five and eight on November 16, 2018. While the verdicts on counts one through four were unanimous, Mr. Brown was convicted on count six by a ten-to-two verdict and on count seven by an eleven-to-one verdict. On January 10, 2019, Mr. Brown filed a "Motion and Order for New Trial," alleging his convictions were contrary to the law and evidence. Specifically, Mr. Brown challenged: (1) the trial court's November 9, 2018 denial of defense counsel's motion to withdraw; (2) the trial court's allowance at trial of the evidence addressed in the motion to suppress; (3) the trial court's denial of Mr. Brown's objections to evidence being introduced without the showing of a complete and uninterrupted chain of custody; (4) the trial court's allowance of Detective Noel Yates to be designated as a drug and narcotics expert; and (5) the trial court's allowance of the State to display a large picture of the fictional character Tony Montana, aka "Scarface," sitting at a table full of cocaine during voir dire.

Also, on January 10, 2019, the State filed a "Habitual Offender Bill of Information," charging Mr. Brown with being a third habitual offender with regard to his conviction for possession of a weapon by a convicted felon and as a fourth habitual offender for all other charges. On February 22, 2019, Mr. Brown filed an amended motion for new trial, adding two new rulings he alleged were erroneous: (1) the trial court's denial of a hearing on Mr. Brown's motion to suppress, and (2) the trial judge's failure to recuse himself based upon his participation on behalf of the State in one of Mr. Brown's prior cases.

A hearing was held on both Mr. Brown's motion for new trial and the habitual offender adjudication on February 27, 2019. The trial court denied the motion for new trial and took the habitual offender adjudication under advisement. On March 26, 2019, the trial court issued a written ruling, which adjudicated Mr. Brown a third felony offender with respect to the possession of a firearm by a convicted felon charge and a fourth offender with respect to the remaining charges.

On May 8, 2019, the trial court sentenced Mr. Brown as follows: count one, thirty-five years at hard labor without the benefit of probation, parole, or suspension of sentence; count two, twenty-five years at hard labor without the benefit of probation, parole, or suspension of sentence; count three, thirty-five years at hard labor without the benefit of probation, parole, or suspension of sentence; count four, thirty-five years at hard labor without the benefit of probation, parole, or suspension of sentence; count six, thirty-five years at hard labor without the benefit of probation, parole, or suspension of sentence; and count seven, six months in the parish jail. The first five sentences were ordered to run consecutively to one another with the sentence for count seven to run concurrently to count six. On June 4, 2018, Mr. Brown filed a motion to reconsider sentence, asserting his sentence was excessive due to the consecutive running of the individual sentences and for failure by the trial court to duly consider Mr. Brown's age. The trial court denied the motion without reasons on June 10, 2018.

Mr. Brown now appeals his convictions and sentences.

III.

**LAW AND DISCUSSION**

By counsel, Mr. Brown raises seven assignments of error. Mr. Brown also raises two pro se assignments of error. We will discuss and address each assignment of error in order of merit.

*Non-unanimous Jury Verdicts*

In his supplemental brief, Mr. Brown raises three counseled assignments of error concerning the non-unanimous jury verdicts returned in counts six and seven. Specifically, he argues that the non-unanimous verdicts violate his right to Equal Protection under the Fourteenth Amendment of the United States Constitution and his right to trial by jury under the Sixth Amendment of the United States Constitution. He further contends that trial counsel was ineffective for not contesting the validity of the non-unanimous jury verdicts either prior to or during trial.

Recently, in *Ramos*, the Supreme Court reversed the ruling of the fourth circuit in *State v. Ramos*, 16-1199 (La.App. 4 Cir. 11/2/17), 231 So.3d 44, *writs denied*, 17-1177 (La. 10/15/18), 253 So.3d 1300, and 17-2133 (La. 6/15/18), 257 So.3d 679, upholding a non-unanimous jury verdict that convicted the defendant of second degree murder. Although the concurring justices did not join in all parts of the majority opinion, the holding in *Ramos* unambiguously determined that non-unanimous verdicts are not permissible under the Sixth Amendment to the United States Constitution and that said prohibition applies to the states through the Fourteenth Amendment, overruling prior jurisprudence from the Louisiana Supreme Court upholding such verdicts in criminal cases. *Ramos* further recognizes, while

7

not explicitly stating, that its ruling will apply to cases pending on direct review in keeping with our jurisprudence in *State v. Ruiz*, 06-1755 (La. 4/11/07), 955 So.2d 81, while Justice Kavanaugh, in his concurrence, slip op., at 15, explicitly states:

> Only Louisiana and Oregon employ non-unanimous juries in criminal cases. To be sure, in those two States, the Court's decision today will invalidate some non-unanimous convictions where the issue is preserved and the case is still on direct review. But that consequence almost always ensues when a criminal-procedure precedent that favors the government is overruled.

As Mr. Brown's case is clearly still in the process of direct review, we find that *Ramos* is binding and that, pursuant to its holding, Mr. Brown's convictions on counts six and seven, returned by ten-to-two and eleven-to-one verdicts, respectively, are unconstitutional. Accordingly, we vacate Mr. Brown's convictions and sentences and remand for a new trial on counts six and seven.[4]

*Unconstitutional Consecutive Sentences*

In his fourth counseled assignment of error, Mr. Brown contends that the trial court's imposition of consecutive sentences, totaling one-hundred sixty-five years at hard labor without benefit of probation, parole, or suspension of sentence, was cruel and unusual punishment and that, consequently, his sentences are unconstitutional. Notably, this is the same argument presented in Mr. Brown's motion to reconsider sentence and is, therefore, properly before this court. Mr. Brown points out that of his six convictions, five were enhanced under the habitual offender law before being run consecutive and that four of those convictions arise from the same June 9, 2017 arrest.

---

[4]Because he has not been deprived of benefitting from the ruling in *Ramos*, Mr. Brown's ineffective assistance of counsel claim is now moot, and we pretermit further discussion of it.

Louisiana Code of Criminal Procedure Article 883 (emphasis added) sets forth the general rule for concurrent versus consecutive sentences:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment *shall* be served concurrently unless the court expressly directs that some or all be served consecutively.  Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.  In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.

Mr. Brown argues the trial court's failure to find that he posed "an unusual risk to the public safety warranting more than the thirty-five years" imposed on count one renders his consecutive sentences, at least for counts one through four, excessive.  He bases this contention on *State v. Sherer*, 437 So.2d 276, 277 (La.1983), which found:

> Because the function of the consecutive sentence should be similar to the sentence imposed on habitual or dangerous offenders, sentences for crimes arising from a single course of conduct should be concurrent rather than consecutive, absent a showing that the offender poses an unusual risk to the safety of the public.  See *State v. Franks*, 373 So.2d 1307 (La.1979); *State v. Cox*, 369 So.2d 118 (La.1979). Cf. La.C.Cr.P. art. 883.  We cannot presume that the sentencing judge viewed the defendant as an unusual risk to the safety of the public because he did not so state.  Instead, the judge expressed his belief that the defendant had become virtually rehabilitated and should be released on parole at the earliest possible time.  For these reasons, the imposition of consecutive rather than concurrent sentences totaling 12 years at hard labor upon a defendant deemed parole-eligible by the sentencing judge for crimes of criminal negligence, rather than intentional offenses, arising from a single course of conduct, are unexplained by the judge's statements and unillumined by this problematic record.

The trial court, during sentencing, stated several reasons for why he felt Mr. Brown's sentences should be consecutive, rather than concurrent: (1) Mr. Brown had a lengthy criminal history of firearm and drug charges; (2) while on bond for drug charges arising out of the June 9, 2017 arrest, Mr. Brown continued to sell drugs; (3) despite having no work history, Mr. Brown was able to post bond of over $225,000 in roughly a week; (4) the volume of drugs and weapons seized from Mr. Brown's residence; and (5) Mr. Brown's residence contained multiple electronic scales and "every type of drug paraphernalia needed to get people high." Further, the trial court noted that Mr. Brown, based upon his convictions, had been selling illegal narcotics for over two decades and was "the true definition of a drug dealer." The trial court observed that even after conviction and serving time, Mr. Brown started drug dealing again upon his release. The trial judge also stated his belief that Mr. Brown had directed counsel to ask questions designed to try and figure out the identities of the confidential informants whose purchases led to the two search warrants.

Mr. Brown asserts that these reasons "might justify consecutive sentences for each of the two offense dates, but not for the charges arising from the same search." Because we have vacated the sentences for counts six and seven, the sentences remaining before us all arise from the same offense date and same course of conduct. Running these four sentences consecutively leaves Mr. Brown with a one-hundred-thirty-year sentence.

As noted in *Sherer*, consecutive sentences are similar in nature to a habitual offender enhancement. Consequently, the imposition of multiple consecutive, habitual offender enhanced sentences is suspect without some evidence the defendant is an undue risk to the public. Though the trial judge believed that Mr.

Brown did pose such a risk, we find, however, that the resulting one-hundred-thirty-year sentence herein is not supported by the evidence presented at sentencing. Moreover, the sentences were already enhanced under the law. *See* La.R.S. 15:529.1. The trial court's reasons do not justify consecutive sentences on four crimes that all occurred simultaneously.

Additionally, the recently enacted Louisiana's Justice Reinvestment Reforms of 2017 implore us to seriously consider Louisiana's history of long-term incarceration. *See* 2017 La. Acts Nos. 258, 260, 261, 262, 264, 265, 277, 280, 281, and 282. In keeping therewith, we find the imposition of concurrent rather than consecutive sentences for crimes arising out of the same conduct would better serve the policy behind the Justice Reinvestment Initiative of reducing sentences for certain drug offenses as well as habitual offender penalties. *See* 2017 La. Acts Nos. 281 and 282.

Accordingly, we remand this matter to the trial court for resentencing with concurrent sentences on counts one through four, with the length of the sentences to be in accordance with the enhanced sentencing provisions of the Habitual Offender Law, La.R.S. 15:529.1.

*Denial of New Trial Motion*

In his first counseled assignment of error, Mr. Brown challenges the trial court's denial of his motion for new trial. His "Motion and Order for New Trial" and the subsequently filed amended motion for new trial averred that the verdict was contrary to the law and evidence and also that the trial court erred in several rulings.

11

This court, in *State v. Pontiff*, 14-1049, pp. 16-17 (La.App. 3 Cir. 5/6/15), 166 So.3d 1120, 1132, *writ denied*, 15-1107 (La. 10/28/16), 209 So.3d 94, addressed the standard of review applicable to motions for new trial:

> [T]he following standard must be adhered to when an appellate court reviews a motion for new trial:
>> The denial of a motion for a new trial is not subject to appellate or supervisory review except for error of law. La.Code Crim.P. art. 858. The decision on a motion for new trial rests within the sound discretion of the trial judge. We will not disturb this ruling on appeal absent a clear showing of abuse. The merits of such a motion must be viewed with extreme caution in the interest of preserving the finality of judgments. Generally, a motion for new trial will be denied unless injustice has been done. *See* La.Code Crim.P. art. 851; *State v. Home [Horne ]*, 28,327 (La.App.2d Cir. 8/21/96), 679 So.2d 953, 956, *writ denied*, 96–2345 (La.2/21/97), 688 So.2d 521.
>
> *State v. Austin*, 11-2150, p. 7 (La.App. 1 Cir. 6/8/12), 2012 WL 2061531 (unpublished opinion), *writ denied,* 12-1595 (La.2/8/13), 108 So.3d 77.

Louisiana Code of Criminal Procedure Article 851 enumerates the grounds for the mandatory granting of a motion for new trial, providing:

> A.   The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
>
> B.   The court, on motion of the defendant, shall grant a new trial whenever any of the following occur:
>
>> (1) The verdict is contrary to the law and the evidence.
>>
>> (2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error.

12

(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.

(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment.

(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.

(6) The defendant is a victim of human trafficking or trafficking of children for sexual purposes and the acts for which the defendant was convicted were committed by the defendant as a direct result of being a victim of the trafficking activity.

Initially, the trial court noted "that Mr. Brown was convicted after a jury trial and the court is not of the opinion that injustice was done to the defendant." The trial court then proceeded to discuss the grounds for a new trial listed in La.Code Crim.P. art. 851(B), specifically finding the verdict was not "contrary to the law and evidence." Turning now to the grounds alleged in Mr. Brown's amended motion for new trial, namely the alleged errors in numerous trial court rulings, we address each briefed issue separately.[5]

---

[5]Appellate counsel failed to brief three of the alleged errors from the motions for new trial: (1) denial of counsel's objections related to chain of custody; (2) acceptance of Detective Noel Yates as an expert; and (3) failure to disclose involvement in prior prosecution. As such, we will consider these claims abandoned and pretermit discussion of same. *See* Uniform Rules—Courts of Appeal, Rule 2-12.4(B)(4).

*Denial of Counsel's Motion to Withdraw*

On November 5, 2018, trial counsel, Don W. Martin, filed a "Motion to Withdraw," alleging a conflict of interest based upon Mr. Brown's filing of a complaint against Mr. Martin with the Louisiana Attorney Disciplinary Board and Mr. Brown's written accusation of malpractice against counsel. The motion was denied, without hearing, on November 9, 2018. As noted above, Mr. Brown's trial commenced on November 13, 2018. Mr. Brown contends "[c]ursory denial was an abuse of discretion."

Our supreme court has long acknowledged that while an accused has the constitutional right to counsel of his choosing, the right is

> one which cannot be manipulated to obstruct the orderly procedure in our courts and which cannot be used to interfere with the fair administration of justice. *State v. Anthony*, 347 So.2d 483 (La.1977); *State v. Frezal*, 278 So.2d 64 (La.1973); *State v. St. Amand*, 274 So.2d 179 (La.1973). The right of defendant to counsel of his choice must be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system of which it is a part. *State v. Dickerson*, 353 So.2d 262 (La.1977); *State v. Cousin*, 307 So.2d 326 (La.1975); *State v. St. Amand, supra*. Once the day of trial arrives, the question of substitution of counsel rests largely within the discretion of the trial judge.

*State v. Lee*, 364 So.2d 1024, 1028 (La.1978). And a reviewing court will not disturb the trial court's ruling absent a clear showing of abuse of discretion. *State v. Johnson*, 389 So.2d 1302 (La.1980).

The State asserts "there was no conflict between the defendant and his attorney on display at any point during the trial." Mr. Brown points out that the State "was not privy to the actual discussions between" himself and trial counsel before or during trial. While we agree with Mr. Brown's statement, we acknowledge the

language of *Pontiff*, 166 So.3d at 1132, noting that "[g]enerally, a motion for new trial will be denied unless injustice has been done." This language places the burden on Mr. Brown to prove he was prejudiced by the trial court's denial of Mr. Martin's motion to withdraw.

Although Mr. Brown argues "[t]here was also no evidence that the [m]otion was filed to manipulate the system or that Appellant was being recalcitrant or contentious with counsel without cause[,]" there is also no evidence to the contrary, aside from counsel's assertion in said motion that it was not filed to delay proceedings. As noted by the State, trial counsel did little at the motion for new trial hearing beyond reiterating the grounds of the written motion. Accordingly, we cannot say an injustice was done to Mr. Brown when the court denied Mr. Martin's motion to withdraw. As such, we find the trial court did not abuse its discretion in denying the motion for new trial on this ground.

### *Admission of Evidence Obtained by Search Warrants*

As will be discussed below, Mr. Brown's motion to suppress, filed on July 25, 2018, was denied by the trial court as untimely under La.Code Crim.P. art. 521, which states:

> A. Pretrial motions shall be made or filed within fifteen days after arraignment, unless a different time is provided by law or fixed by the court at arraignment upon a showing of good cause why fifteen days is inadequate.
>
> B. Upon written motion at any time and a showing of good cause, the court shall allow additional time to file pretrial motions.
>
> C. If by pretrial motion the state or the defendant requests discovery or disclosure of evidence favorable to the defendant, then the court shall fix a time by which the state or the defendant shall respond to the motion.

15

On its face, the trial court's ruling that the motion was untimely is correct. In light of the denial, the merit of the motion was not addressed during a pre-trial hearing. However, during trial, defense counsel objected to the introduction of the evidence on the same grounds upon which the motion was based. Counsel argued that because the affidavits in support of the search warrants executed on June 9 and October 31, 2017, were insufficient to establish probable cause, any evidence was seized in violation of Mr. Brown's Fourth Amendment rights. Additionally, it was contended that Mr. Brown's statement, given to law enforcement during the execution of the June 9, 2017 warrant, was obtained without Mr. Brown being apprised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966). The trial court noted Mr. Brown's continuing objection to the introduction of any evidence or testimony resulting from the execution of the above-referenced search warrants. Following the State's final witness, the trial court explicitly stated he found the affidavits supporting the June 9, 2017 and October 31, 2017 warrants established probable cause.

Under La.Code Crim.P. art. 703(D), the burden of proof on a motion to suppress is upon the defendant unless there is a warrantless search. Here, the searches at issue were pursuant to warrants; thus, Mr. Brown bears the burden of proving the warrants were not supported by affidavits, which established probable cause to issue said warrants. Noting Mr. Brown previously had a federal conviction for possession with intent to distribute twenty-eight grams or more of crack cocaine overturned based upon an invalid affidavit for a search warrant, we recognize the following section of that ruling:

> Because a search warrant had been procured, we engage
> in a two-part test to review the district court's decision.
> *See United States v. Rojas Alvarez*, 451 F.3d 320, 329 (5th

16

Cir.2006). "First, [we] determine [ ] whether the good-faith exception to the exclusionary rule applies; if it does not, [we] must ascertain whether the warrant was supported by probable cause." *Id.* at 329-30 (quoting *United States v. Gibbs*, 421 F.3d 352, 355 (5th Cir.2005)). For the purpose of the good-faith exception, we review the district court's evaluation of the officers' objective reasonableness *de novo. United States v. Payne*, 341 F.3d 393, 399 (5th Cir.2003).

The Fourth Amendment exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Leon*, 468 U.S. 897, 920, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Under this good-faith exception, "evidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible in the prosecution's case-in-chief, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Shugart*, 117 F.3d 838, 843 (5th Cir.1997) (quoting *United States v. Craig*, 861 F.2d 818, 821 (5th Cir.1988)). We confine our good-faith inquiry to "the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. 3405. The good-faith exception does not apply, and the officer may not merely rely on the magistrate judge's determination of probable cause, when "the officer [does not have] reasonable grounds for believing that the warrant was properly issued." *Id.* at 922–23, 104 S.Ct. 3405. The exception therefore does not apply, and suppression is the appropriate remedy, where: (1) the magistrate or judge who issued the warrant "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "the issuing magistrate wholly abandoned his judicial role"; (3) the officer relied on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 923, 104 S.Ct. 3405(citations omitted) (internal quotation marks omitted); *accord United States v. Mays*, 466 F.3d 335, 343 (5th Cir.2006).

*U.S. v. Brown*, 567 F.App'x. 272, 280-81 (5th Cir. 2014).[6]

In excluding the evidence obtained from searching Mr. Brown's residence in his federal conviction, the Fifth Circuit found the search fell into the third category discussed in *Leon*. Specifically, the court found the affidavit (1) failed to indicate how much cocaine was seized during a traffic stop the prior night, (2) referenced marijuana found in the backseat of a police car but failed to note it was by Mr. Brown's passenger, not Mr. Brown who had been well-searched prior to arrest, and (3) incorrectly stated Mr. Brown was on parole for drug charges when he was on parole for a weapons-related offense. The *Brown* court also noted the affidavit provided no details regarding the reliability of the informant who gave information during a four-month investigation and failed to explain how the packaging of the drugs found during the traffic stop was consistent with Mr. Brown's described method or if the method was unique. Finally, the court found the affidavit failed to establish any connection between Mr. Brown's residence and the drug-trafficking investigation.

To review the trial court's decision herein, this court must now apply the two-part test recited above. In the first step, we need to determine whether the good faith exception applies in the instant case. If it does, we have no need to determine whether the affidavits do, in fact, establish probable cause. *See Brown*, 567 F.App'x. 272. Without replicating the entirety of the affidavits, which appellate counsel has done in brief, we find the affidavits included sufficient indicia of probable cause and were not so deficient that the executing officers could not have presumed validity. Additionally, there is no claim that the affiants lied or that the

---

[6]This opinion may be found at 2014 WL 1877934.

18

magistrates wholly abandoned their judicial roles. Accordingly, in light of *Brown* and *Leon*, 468 U.S. 897, cited extensively therein, we find that the good faith exception would apply, and Mr. Brown could not have succeeded in meeting his burden of proving the evidence should have been suppressed.

Unlike the affidavit in question in *Brown*, the affidavit filed by Detective Misti Bryant Martin of the Vernon Parish Narcotics Task Force (VPNTF), which led to the June 9, 2017 warrant, specifically noted that a confidential informant who had previously provided accurate information that helped lead to the arrest of five drug dealers informed the VPNTF that Mr. Brown was selling illegal narcotics from his residence, identified as 1729 Nona Street, Leesville, LA, 71446. The affidavit (1) noted three separate crack cocaine purchases had been made at the home, one of which had been made in the forty-eight hours preceding the affidavit; (2) provided the exact address; (3) specified that drug purchases had been made at said address, and (4) stated Mr. Brown had retrieved the drugs while at the residence. It follows, therefore, that the executing officers would have had "reasonable grounds for believing that the warrant was properly issued." *Leon*, 468 U.S. at 923.

The affidavit in support of the October 31, 2017 warrant, produced by Detective Noel Yates, indicated that "a confidential informant that has assisted the VPNTF for many years in the Vernon Parish area in various narcotics related cases" had informed the task force that Mr. Brown's residence was still seeing high traffic, which was "consistent with narcotics activity from [Detective Yates's] training and experience." It also stated that the task force had conducted four controlled buys of Schedule II drugs from Mr. Brown during the months of September and October 2017, with the most recent purchase being within forty-eight hours of the affidavit. As noted in the affidavit, this was the same person selling illegal narcotics from the

19

same address where drugs and firearms were recovered pursuant to the June warrant. Again, we cannot say that executing officers would have lacked "reasonable grounds for believing that the warrant was properly issued." *Id.* Accordingly, we find this argument lacks merit. For these same reasons, we likewise find no merit in Mr. Brown's second pro se assignment of error, in which Mr. Brown argues that the trial court should have ruled in his favor on his motion to suppress.

### *Publication of a Picture of Tony Montana from* Scarface

Mr. Brown contends the trial court erred in allowing the State to display a photo of fictional drug kingpin Tony Montana, Al Pacino's character in the 1983 film *Scarface*, during voir dire. At the hearing on the motions for new trial, defense counsel stated the following regarding this alleged error:

> And then we had the photograph of Al Pacino as "Scarface," that was shown once. And the second time it was shown I felt like that was overkill, prejudicial to my client equating him to a -- to that photograph. And, whereas the first time it was shown it was more or less in the context of explaining to the jurors, during *voir dire*, their -- some of the points that the State intended to go over and it wasn't zeroed in on my client specifically at that point. So, I -- the first time I didn't object to it, but the second time I felt like that was prejudicial.

The State responded:

> Uh, with respect to the repeated publishing of the photo of Al Pacino as "Scarface," that was part of the State's *voir dire*. It was put up to -- to -- for the purpose of showing that you -- we have no idea what drug dealers look like. It was never pointed at Casetti Brown. And any intimation that, that was urged by the State or said by the State or the intent of the State is completely wrong. When Mr. Don Martin did object to that, it was taken down. And he didn't object to it during its first, uh, period of time while it's up. I think his argument bears that out. And, so, he got the relief that he asked for when he asked for it and the basis that he's seeking the relief on is -- is not correct. The State did not point at Casetti Brown and say, "He's Scarface, Al

20

Pacino, and he's a horrible person." We didn't say that at all. The point of it was to use something culturally significant to people from the movies as a basis to explain that people from all walks of life, uh, commit these types of crimes and somebody's appearance is not something that you can usually use in order to decide these cases. And on that basis, I don't think it's prejudicial at all that it was shown to the jury.

During the early stages of voir dire, the State used the photograph as an introduction to a discussion of what it takes for possession to include intent to distribute. There was no objection made to the picture during the first panel of voir dire. During the second panel of potential jurors, the State again put up the picture, while discussing the definitions of the distribution crimes at issue in the case. At that point, defense counsel objected on the ground that the picture being used again was prejudicial and asked that the photograph be taken down and that the jury be instructed to disregard the photograph. The trial court, noting there was no objection to the use of the photograph during the first day of voir dire, overruled the objection. Although it cannot be determined from the transcript of voir dire, the State contended at the motion for new trial that the picture was taken down when defense counsel objected. There is no evidence to contradict this assertion.

Under La.Code Crim.P. art. 786, the scope of voir dire "shall be within the discretion of the court." As the supreme court has previously held:

> The scope of examination lies within the sound discretion of the trial court, [*State v. Hall*, 616 So.2d 664, 668-69 (La.1993)]; *State v. Stucke*, 419 So.2d 939, 947 (La.1982); *State v. Robinson*, 404 So.2d 907, 911 (La.1981), and reviewing courts owe a district judge's determinations on the scope of *voir dire* great deference and may not disturb them in the absence of a clear abuse of discretion. *Id.*

*State v. Roy*, 95-638, p. 16 (La. 10/4/96), 681 So.2d 1230, 1240, *cert. denied*, 520 U.S. 1188, 117 S.Ct. 1474 (1997).

21

Given that there is no evidence the State did not remove the picture when defense counsel objected to its use, the fact that defense counsel did not object the first time the State used the photograph, and the fact that the jury found Mr. Brown not guilty on multiple counts, we cannot say the trial court abused its discretion in denying defense counsel's objection and not instructing the jury to disregard the photograph.

*Denial of Motion to Suppress Hearing*

As noted above, the trial court denied Mr. Brown's motion to suppress without a hearing in response to the State's objection to its timeliness. Louisiana Code of Criminal Procedure Article 521 requires that pre-trial motions such as a motion to suppress be filed within fifteen days of arraignment unless good cause is shown. Although Mr. Brown concedes that his motion was filed more than fifteen days after arraignment, he contends La.Code Crim.P. art. 703(C) allows the trial court to accept untimely motions to suppress when it states "[t]he court in its discretion may permit the filing of a motion to suppress at any time before or during the trial." Mr. Brown also avers that the trial court misstated the law when it told counsel at the hearing: "Yeah, I think what the -- what the code requires as -- at this late filing, I think you have a burden of showing good cause why the motion has not been filed timely so I will give you that opportunity."

Though the above quote is a misstatement of the law under La.Code Crim.P. art. 703(C), the statement is nevertheless accurate with regard to La.Code Crim.P. art. 521(B)'s mandatory allowance of late-filed motions on "a showing of good cause[.]" Defense counsel then put forth the following argument for good cause:

Right, and what I'm saying is, the only good cause that I can show is just an overburdened public defender system that I am part of. I'm proud to be part of that. I do very detailed work. I'm sure you're aware of how I set my files up. Good quality legal work takes time. I -- I'm not a compromising guy and this has just been one of thousands of things that I've had to deal with and as -- I just wasn't able to get it in on time. I certainly wasn't able to get it in -- Mr. Casetti Brown was arraigned on January 3rd, 2018 on the amended bill of information. There was no way -- excuse me for saying this -- no way in hell I could have done it by -- . . . January 18th.

The trial court did not find defense counsel's claims of being overworked constituted good cause for the late filing of the motion given that trial was scheduled for less than two weeks from the date of the hearing on the State's objection. Mr. Brown, however, contends the motion to suppress should have been heard, citing *State v. Doucet*, 359 So.2d 1239, 1249 (La.1978), for the premise that a claim by a defendant that his constitutional rights have been violated should be tried even during trial, "unless it can be shown that defendant's failure to file a pretrial motion was a deliberate strategic bypass of the State procedure."

Despite the language of *Doucet*, Louisiana courts recognize the discretion of the trial court to refuse to accept motions to suppress in cases wherein the motions are untimely filed on their face. In *State v. Vail*, 17-354, p. 50 (La.App. 3 Cir. 12/28/17), 236 So.3d 644, 678, *writ denied*, 18-202 (La. 11/20/18), 256 So.3d 998, *cert. denied*, __ U.S. __, 139 S.Ct. 1232 (2019), this court upheld a trial court's finding of untimeliness when the defendant submitted a generic, non-specific motion to suppress, reasoning:

"The trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent abuse of that discretion." *State v. Lee*, 05-2098, p. 15 (La. 1/16/08), 976 So.2d 109, 123. In *State v. Cleary*, 262 La. 539, 263 So.2d 882 (La.1972), the supreme court

23

found no abuse of discretion when the trial denied a late and generic oral motion to suppress.

Although Mr. Brown's motion was not generic like the motions filed in *Vail* and *Cleary*, his motion to suppress, filed more than six months after his arraignment, was untimely under La.Code Crim.P. art. 521 on its face. Finding defense counsel failed to establish good cause, the trial court in this case denied the motion to suppress as untimely. Furthermore, the trial court ultimately ruled upon the merits of Mr. Brown's motion when counsel raised the same contentions at trial as objections to the introduction of the evidence he had sought to suppress. We cannot, therefore, say the trial court abused its discretion in denying a hearing on Mr. Brown's motion. This argument is the same argument presented by Mr. Brown in his first pro se assignment of error, and for the reasons stated, we find that both lack merit.

Because we cannot say the cumulative effects of Mr. Brown's alleged errors resulted in an injustice being done, the standard applicable to overturning a trial court's ruling on a motion for new trial, we find this assignment of error meritless.

*Habitual Offender Law*

In his second counseled assignment of error, Mr. Brown claims the trial court applied the wrong version of the habitual offender law, La.R.S. 15:529.1, in adjudicating him a habitual offender. Specifically, Mr. Brown contends the trial court (1) incorrectly applied a ten-year cleansing period instead of the proper five-year period; (2) improperly limited his cross-examination of a witness during the habitual offender hearing while his counsel was contesting when his federal

detention ended; and (3) incorrectly found the State proved the applicable five-year cleansing period had not passed.

Discussing the series of events which led to the amendment of La.R.S. 15:529.1 in both 2017 and 2018, the supreme court in *State v. Lyles*, 19-203, p. 5 (La. 10/22/19), 286 So.3d 407, 410 (footnotes omitted), recently stated:

> We note at the outset, from the plain language of these provisions in conjunction with the effective dates of the acts, the legislature appears to have created three categories of persons potentially affected by these provisions:
>
> 1. There are persons—like the present defendant—whose convictions became final on or after November 1, 2017, and whose habitual offender bills were filed before that date. Those defendants would be eligible to receive the benefits of all ameliorative changes made by Act 282.
>
> 2. There are persons whose convictions became final on or after November 1, 2017, and whose habitual offender bills were filed between that date and August 1, 2018 (the effective date of Act 542). Those persons would be eligible to receive the benefit of the reduced cleansing period, and they may also have colorable claims to the other ameliorative changes provided in Act 282, although we need not decide that question today.
>
> 3. Finally, there are persons whose convictions became final on or after November 1, 2017, and whose habitual offender bills were filed on or after August 1, 2018. They would receive the reduced cleansing period by operation of Subsection K(2) added by Act 542 but their sentences would be calculated with references to the penalties in effect of the date of commission in accordance with Subsection K(2) added by Act 542.

25

As Mr. Brown's conviction and sentence have not become final, we agree with Mr. Brown that he falls into the third category, meaning the applicable cleansing period for Mr. Brown's habitual offender adjudication is five years. Thus, the trial court erred in finding the applicable cleansing period was ten years. However, the trial court calculated Mr. Brown's cleansing time as amounting to "just less than three (3) years" for the convictions arising out of the June 3, 2017 arrest and "just over three (3) years" for the convictions arising out of the October 31, 2017 arrest. The trial court calculated this time based upon a September 8, 1994 conviction, a September 8, 1995 conviction with a May 7, 1995 offense date, and a March 14, 2006 conviction with an August 14, 2003 offense date, as follows:

> The time between the first conviction on September 8, 1994 until the offense date of his second felony of May 7, 1995 is zero (0) years, as he was still on felony supervision. The time between the second conviction of September 8, 1995 until the third conviction offense date of August 14, 2003 is zero (0) years, as he was still on felony supervision. Mr. Brown was released from felony supervision on July 25, 2014. The instant offenses were committed June 9, 2017 and October 31, 2017.

As will be discussed below, Mr. Brown contends the use of the July 25, 2014 date, the date he was released from federal custody, was error. However, the State asserts that Mr. Brown failed to preserve any complaint against the calculation of his cleansing period by failing to object to the calculation, as set out in the trial court's written ruling, at sentencing or in his timely-filed motion to reconsider.

Under La.Code Crim.P. art. 881.1(E):

> Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

26

Regardless, habitual offender proceedings are generally reviewed as errors patent. Accordingly, we will consider Mr. Brown's claim, despite his failure to previously object to the trial court's determination of his habitual offender status.

As stated above, the trial court erred in finding the applicable cleansing period was ten years when it was actually five years. In its habitual offender memorandum to the trial court, the State correctly asserted there was a five-year cleansing period.[7] Despite this, however, we find the trial court did not err in finding Mr. Brown's cleansing period did not begin until his release from federal custody, as Louisiana courts have unanimously and consistently held that computation of the cleansing period is based upon actual date of release from custody or supervision. *See State v. Anderson*, 349 So.2d 311 (La.1977); *State v. Robinson*, 549 So.2d 1282 (La.App. 3 Cir. 1989); *State v. Thomas*, 52,617 (La.App. 2 Cir. 5/22/19), 272 So.3d 999, *writ denied*, 19-1045 (La. 2/10/20), __ So.3d __; and *State v. Stock*, 16-552 (La.App. 5 Cir. 2/22/17), 212 So.3d 1268.

There is no dispute that Mr. Brown was released from federal custody on July 24, 2014.[8] While the State bears the burden of proving the cleansing period had not passed, the evidence produced at the hearing established that Mr. Brown was not released from federal custody until July 24, 2014. Accordingly, we find the trial court's calculation of Mr. Brown's cleansing period was correct and the applicable

---

[7]Mr. Brown's supervised release on his March 14, 2006 conviction was revoked on October 28, 2010. However, sentencing was "deferred until charges contained in violation #1 are disposed of." On February 29, 2012, Mr. Brown was then "sentenced to 24 months, concurrent with sentence imposed in 2:10-cr-00291" of 150 months incarceration, with eight years of supervised release and credit for time served. The federal docket number 2:10-cr-00291 is the docket number vacated in *U.S. v. Brown*, 567 F.App'x. 272. Given all of this information, Mr. Brown is correct that he should have been released from custody on his 2006 conviction no later than October 28, 2012, given his revocation date, sentence, and not granting any good time diminutions of sentence.

[8]This is the date the indictment in 2:10-cr-00291 was dismissed.

27

five-year cleansing period had not run when Mr. Brown was arrested in June of 2017. This assignment of error, therefore, lacks merit.

### *Admission of Statement*

In his third counseled assignment of error, Mr. Brown contends the trial court erred in admitting his statement to law enforcement on June 9, 2017, without the State first proving he had been informed of his *Miranda* rights. Under La.R.S. 15:451, "[b]efore what purports to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." Additionally, under La.Code Crim.P. art. 703(D), "the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant[.]"

The testimony whether Detective Noel Yates properly advised Mr. Brown of his *Miranda* rights was somewhat contradictory. Detective Yates testified that, when executing the June 9, 2017 warrant, he and Detective Misti Bryant Martin immediately contacted Mr. Brown. It was Detective Yates's testimony that he informed Mr. Brown of his *Miranda* rights "as soon as the residence was secure." Detective Martin testified that, shortly after making contact with Mr. Brown and advising him as to why they were there, Mr. Brown "was read his Miranda Rights by Detective Yates." Officer Jim Lewis of the Leesville Police Department testified that he was wearing a body camera on June 9, 2017, when he assisted the VPNTF in executing a warrant for Mr. Brown. He acknowledged that he did not hear Detective Yates inform Mr. Brown of his rights in the video and stated he did not observe anyone give Mr. Brown his *Miranda* rights. Officer Lewis also acknowledged that Detectives Martin and Yates spoke with Mr. Brown before he arrived. Detective

28

Yates, who testified Officer Lewis was present when he advised Mr. Brown of his rights, noted that a portion of the video from Officer Lewis's body camera was not "coherent" and that it was during this period of time that he advised Mr. Brown of his rights.

The body camera video recording was admitted into evidence during trial and played for the jury. On the recording, Mr. Brown can be heard making incriminating statements about the location of drugs in the home. He further told the detectives that the room the drugs were found in was his. Both Detective Yates and Detective Martin testified that Mr. Brown made the statements after he had been advised of his *Miranda* rights.

Mr. Brown contends there was simply not enough time within which Detective Yates could have advised him of his rights. He further argues that because no waiver of rights form was ever introduced, the State failed to prove his statement was freely and voluntarily given.

In *State v. Allen*, 40,972, pp. 10-11 (La.App. 2 Cir. 5/17/06), 930 So.2d 1122, 1130, *writ denied*, 08-507 (La. 11/26/08), 997 So.2d 543, the second circuit explained the weight afforded to the trial court's findings in these circumstances:

> A trial court's findings following a free and voluntary hearing are entitled to great weight and will not be disturbed unless unsupported by the evidence. *State v. Durr*, 28,197 (La.App. 2d Cir.6/26/96), 677 So.2d 596; *State v. English*, 582 So.2d 1358 (La.App. 2d Cir.1991), *writ denied*, 584 So.2d 1172 (La.1991). Testimony of the interviewing police officer alone may be sufficient to prove that the statement was given freely and voluntarily. *State v. Pittman*, 585 So.2d 591 (La.App. 5th Cir.), *writ denied*, 586 So.2d 545 (La.1991).

Multiple officers testified Mr. Brown was read his *Miranda* warnings prior to his making an inculpatory statement that the room with drugs inside it was

his bedroom. As recited above, the testimony of the interviewing officer may be sufficient proof that a statement is free and voluntary. Additionally, "[i]n reviewing the trial judge's ruling as to the admissibility of a confession, his conclusions on credibility are entitled to the respect due those made by one who saw the witnesses and heard them testify." *State v. David*, 425 So.2d 1241, 1245 (La.1983). Apparently, the trial court felt the testimony of Detectives Martin and Yates was sufficient proof that Mr. Brown was aware of his *Miranda* rights prior to giving his statement. As such, we cannot say the trial court erred in allowing the statement. Accordingly, we find this assignment of error too lacks merit.

IV.

## CONCLUSION

For the foregoing reasons, Mr. Brown's convictions and individual sentences in counts one through four are affirmed. Pursuant to *Ramos*, Mr. Brown's convictions and sentences on counts six and seven are vacated. This case is further remanded to the trial court for resentencing in order to sentence Mr. Brown on counts one through four concurrently, with the length of the sentences to be in accordance with the enhanced sentencing provisions of the Habitual Offender Law, La.R.S. 15:529.1, and for a new trial on counts six and seven.

**AFFIRMED IN PART; VACATED IN PART; AND REMANDED.**